UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

V.                                                                    5:19-CR-00011-KHJ-FKB

ARTHUR WILSON

ORDER

Before the Court is Defendant Arthur Wilson's [98] Motion for Acquittal or in the Alternative for a New Trial. The motion is denied for the following reasons.

I.     Facts and Procedural History

Wilson was convicted by a jury of one count of conspiring to distribute and possess, with intent to distribute, marijuana and methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) ("Count 1"), and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)–(ii) ("Count 2"). Wilson moved orally at the end of the Government's case-in-chief for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court denied the motion. Wilson now moves for a judgment of acquittal or, in the alternative, for a new trial. [98].

II.    Standard

Rule 29 governs Wilson's motion for judgment of acquittal. The Court must "consider the evidence as a whole taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a

reasonable doubt." *United States v. Turner*, 960 F.2d 461, 465 (5th Cir. 1992) (quotation omitted). "[A]ll reasonable inferences and credibility choices must be made in favor of the jury verdict." *United States v. Deville*, 278 F.3d 500, 505 (5th Cir. 2002) (quotation omitted). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). Rather, "[a] jury is free to choose among reasonable constructions of the evidence." *Id.* (quotation omitted). "In effect, the court assumes the truth of the evidence offered by the prosecution." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

On the other hand, Rule 33 governs Wilson's motion for a new trial. "[A] motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal." *Id.* Rule 33(a) grants district courts discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." A court should exercise that discretion "only in exceptional cases", however. *Robertson*, 110 F.3d at 1120 n.11. "The trial judge may weigh the evidence and assess the credibility of the witnesses in considering the motion." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005). But "[it] may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Robertson*, 110 F.3d at 1118 (citation omitted). To grant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.*

2

III. Analysis

    A. Motion for Judgment of Acquittal

Wilson maintains he is entitled to a judgment of acquittal because "[t]he actions ostensibly proven by the Government do not constitute money laundering" and "[t]he evidence elicited at trial does not support a conviction on either count—even when viewed in the light most favorable to the Government." [98] at 2–3. His challenges fail.

    1. Count 1

Wilson first contends the evidence was insufficient to support a conviction on Count 1 because the Government presented no evidence that he "personally possessed methamphetamine or made any agreement concerning the distribution of methamphetamine." *Id.* at 3. He asserts the Government's evidence was threadbare because it included only a "general allegation that the drugs were to be mailed." *Id.* The Court disagrees.

A rational trier of fact could have found Wilson guilty beyond a reasonable doubt based on the Government's presented evidence. For example, Bell testified that Wilson shipped him marijuana and methamphetamine from 2016–2018. Wilson's co-conspirators also testified about how he provided them with tracking numbers for postal shipments containing drugs. The Jury heard recorded telephone calls in which Wilson described his dealings with Bell, Swearengen, and Singleton as it pertained to distributing methamphetamine. The Government also introduced photographs of drug shipments, actual methamphetamine seized, and financial

records detailing wire transfers connected to Wilsons's shipments. The Government's evidence did not solely consist of general allegations that drugs were to be mailed.

As for possession, Wilson argues the Government failed to prove he actually or constructively possessed any methamphetamine with the intent to distribute it. *Id.* at 4. But Swearengen and Bell both testified that they communicated with Wilson before receiving drug shipments from him, and Wilson would provide them with the corresponding tracking numbers so they could intercept the packages. Together with the evidence cited above, a rational trier of fact could have found beyond a reasonable doubt that Wilson entered the conspiracy as charged in Count 1 and actually or constructively possessed methamphetamine.

Wilson lastly asserts that the Government failed to prove "he reasonably should have known that the conspiracy involved 500 grams or more of methamphetamine." *Id.* The evidence conflicts with Wilson's assertion. Swearengen testified that he received about 18 pounds of methamphetamine from Wilson shortly before September 28, 2018. And the Government entered evidence of methamphetamine seized from the conspiracy and laboratory reports reflecting the weights of those methamphetamine shipments. That evidence showed over 500 grams of methamphetamine were mailed in the conspiracy. In sum, this challenge also fails.

2. Count 2

Wilson maintains the Government failed to prove beyond a reasonable doubt that he is guilty of conspiracy to commit money laundering. *Id.* at 4–5. Count 2 required the Government to prove three elements: (1) Wilson and at least one other individual agreed to commit money laundering as charged in the indictment; (2) Wilson knew the unlawful purpose of the agreement; and (3) Wilson joined in the agreement willfully, that is, with the intent to further the unlawful purpose. 18 U.S.C. § 1956. Under the first prong, money laundering required a showing that: (1) Wilson knowingly conducted, or attempted to conduct, a financial transaction; (2) the financial transaction, or attempted financial transaction, involved the proceeds of a specified unlawful activity, namely possession of a controlled substance with intent to distribute it; (3) Wilson knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) Wilson knew that the financial transaction was designed, in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity; or to avoid financial reporting requirements.

Wilson specifically contends the evidence did not prove that the money deposited into his bank account constituted "proceeds." [98] at 2–3 (citing *Wilson v. Roy*, 643 F.3d 433, 436 (5th Cir. 2011)). He adds no explanation for his contention. The word "proceeds" in § 1956 means "receipts rather than profits" if the laundered

5

money derives from the sale of narcotics. *Id.*[1] The evidence at trial showed that Swearingen and Bell provided Wilson with many payments via wire transfer, cashier's checks, and direct deposits. They testified the money they sent to Wilson derived from selling the methamphetamine and marijuana Wilson had previously provided them. The jury found Swearingen and Bell credible. Their testimony, along with other evidence, supports the finding that the money transmitted to Wilson constituted "proceeds" under § 1956.

Wilson next contends he could not have been involved in any such money laundering conspiracy until he was paid and controlled the proceeds. [98] at 3. Not so. As stated above, the Government had to prove an agreement between Wilson and at least one other individual, that Wilson knew of the unlawful purpose of that agreement, and that he willfully entered that agreement. *See* 18 U.S.C. § 1956. But the statute imposes no requirement for conspiracy to commit money laundering that Wilson receive or control the proceeds. *See* 18 U.S.C. § 1956; *see also United States v. Sylvester*, 583 F.3d 285, 295 (5th Cir. 2009) (stating no overt act required). Accordingly, Wilson's challenge fails.

Wilson lastly asserts that no evidence showed he: "agreed with anyone to conceal or disguise the nature, location, source, ownership, or control of the proceeds deposited into his personal bank accounts;" "engaged in any transactions

---

[1] The Government construes Wilson's motion as raising a merger challenge. [99] at 10. But Wilson's motion does not explain why a merger problem exists, other than stating, "the term 'proceeds' means gross revenue rather than profits regardless of any potential merger problem." [98] at 3. Wilson appears to explain the cited decision, which also uses the phrase "regardless of any potential merger problem." *Wilson*, 643 F.3d at 436. In sum, the Court does not read Wilson's motion as raising a merger challenge.

with the proceeds he received after they were deposited into his accounts"; or "conspired with anyone to take actions designed in whole or part to avoid reporting requirements before or after the money was deposited into his accounts." [98] at 4–5. A rational jury could have found otherwise.

For example, the Government presented evidence that, during the conspiracy, thousands of dollars in drug proceeds flowed through Wilson's financial accounts. Wilson's co-conspirators testified that Wilson gave them his bank account numbers to deposit money, and that money originated from the sale of methamphetamine and marijuana. Swearengen also testified about the varied ways money was provided to Wilson, including keeping payments to Wilson below $10,000 and consistently depositing different amounts into Wilson's accounts to avoid banks flagging the transactions. He stated Wilson agreed with depositing money in smaller amounts to avoid being detected. Considering this evidence, together with the Government's entire case-in-chief, a rational jury could have found Wilson guilty of Count 2 beyond a reasonable doubt.

  B. Motion for New Trial

Wilson maintains he is entitled to a new trial because "[t]here was no evidence of any plan or agreement between Mr. Mitchell and Mr. Wilson for the shipment of any methamphetamine to Mr. Bell," "the alleged co-conspirators' testimony was so inherently suspect that no rational trier of fact should have given any credence to their testimony," and the alleged co-conspirators" testified to "obtain leniency at their own sentencing[, making] their testimony constitutionally

7

insufficient to support the jury's verdict." *Id.* at 5–6. He also maintains the Court erred by denying, in part, his [73] Motion to Substitute Counsel and by denying his [78] Motion to Extend Deadlines. *Id.* at 6.

1. Evidence of Conspiracy

The verdict is not against the weight of the evidence such that letting the verdict stand would be a miscarriage of justice. *See Robertson*, 110 F.3d at 1118; Fed. R. Crim. P. 33(a). The Government adduced sufficient evidence to prove beyond a reasonable doubt that Wilson conspired to distribute and possess, with intent to distribute, marijuana and methamphetamine. Contrary to Wilson's assertions that Bell received methamphetamine directly from Mitchell, Bell testified that Wilson provided him with methamphetamine and marijuana to sell from 2016–2018. He stated Wilson mailed the substances to Bell in Natchez, Mississippi, where Bell lived. Swearengen's testimony and the Government's exhibits corroborated Bell's testimony. *E.g.*, G-17. Accordingly, Wilson's motion for a new trial is denied as to this challenge.

2. Witnesses' Credibility

The alleged lack of credibility of Wilson's co-conspirators' testimony does not "preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Robertson,* 110 F.3d at 1118. First, Wilson could cross-examine his co-conspirators about their convictions or motives they might have had to provide false testimony. Additionally, the plea agreements of five co-conspirators were admitted into evidence. *See* G-31, G-32, G-33, G-34, G-35. The

8

Jury could consider the agreements in their deliberations and weigh their contents against the witnesses' testimony. *Cf. United States v. Presley*, No. 5:12-CR-2, 2012 WL 4903357, at *3 (S.D. Miss. Oct. 16, 2012) (stating impeachment evidence about witness's close, personal relationship with defendant "is not the kind of evidence that could render [witness's] testimony so incredible as to warrant a new trial"). Lastly, the Government called twenty witnesses and admitted into evidence over thirty exhibits. Wilson's co-conspirators' testimony was an important part of the Government's case-in-chief, but it was not the only evidence presented. For example, the Jury considered financial records, photographs of drug shipments, and audio recordings.

The Court has considered Wilson's argument and concludes that, coupled with the Government's other evidence, the co-conspirators' testimony about their agreements with the Government does not warrant a new trial under Rule 33(a).

### 3. Pretrial Motions

The Court previously considered Wilson's arguments, provided written orders explaining its reasons for rejecting them, and believes it properly ruled on each issue raised. *See* [75], [81]. Wilson neither presents new authority nor identifies any error or circumstance that warrants a new trial based on the Court's previous rulings. *See* [98] at 6.

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendant Arthur Wilson's [98] Motion for Acquittal or in the Alternative for a New Trial is DENIED.

SO ORDERED AND ADJUDGED this the 22nd day of November, 2022.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE